05590-M3599
RPK/dkl
G:\99\M3599\M3599PSJ 002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

REVEREND ERIK REDWOOD and )
JUDE MARIE REDWOOD, )
                         )
     Plaintiff, )
                         )
     vs. )  No.: 00-2305
                         )
ELIZABETH DOBSON, CHAMPAIGN )
COUNTY ASSISTANT STATE'S ATTORNEY, )
in her Official and Individual Capacities; )
MARVIN IRA GERSTEIN; HARVEY CATO )
WELCH, TROY R. PHILLIPS, in his Individual )
capacity; and the CITY OF URBANA POLICE )
DEPARTMENT, )
                         )
     Defendants. )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ELIZABETH DOBSON'S MOTION FOR SUMMARY JUDGMENT

         Defendant, ELIZABETH DOBSON, CHAMPAIGN COUNTY ASSISTANT STATE'S

ATTORNEY, by her attorneys, Richard P. Klaus and Keith B. Hill of Heyl, Royster, Voelker &

Allen, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and CDIL-LR 7.1(D),

respectfully submits her Memorandum of Law in support of her Motion for Summary Judgment.

     I.         **INTRODUCTION**

         Plaintiffs' Third Amended Complaint contains eleven counts, naming Elizabeth Dobson

in four counts (Counts I - IV).  The claims against Elizabeth Dobson arise from her involvement

in the prosecution of Plaintiff Erik Redwood for a Hate Crime, a Class 4 felony, and are brought

under Section 1983.  Counts I through III allege that Elizabeth Dobson conspired with Harvey

Welch, Marvin Gerstein and Troy Phillips to violate Plaintiff Erik Redwood's First Amendment

HEYL ROYSTER
VOELKER
& ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

1

rights to free speech, petition the government and free exercise of religion, respectively.  Count IV alleges that Elizabeth Dobson conspired with Mr. Welch, Mr. Gerstein and Mr. Phillips to violate Plaintiff Erik Redwood's Fourteenth Amendment right to equal protection.

Elizabeth Dobson is entitled to summary judgment as to Counts I through IV because the material undisputed facts establish that Elizabeth Dobson is entitled to absolute immunity and qualified immunity, and that Elizabeth Dobson did not violate Plaintiff Erik Redwood's constitutional rights.

## II.    MATERIAL UNDISPUTED FACTS

1.    In 1982, Harvey Welch represented Plaintiff Erik Redwood in a criminal case.  The case eventually went to trial, and Plaintiff Erik Redwood was convicted of battery.  (7/5/01 Welch Dep. at 4, attached hereto as Exhibit A).[1]

2.    Harvey Welch is an attorney who has been practicing for nearly 25 years.  (Welch Dep. at 10, attached hereto as Exhibit B).

3.    Plaintiff Erik Redwood believes that Mr. Welch did not adequately represent him. (Erik Redwood Dep. at 19-22, attached hereto as Exhibit C).

4.    In 1990, Governor James Thompson granted a Pardon to Plaintiff Erik Redwood. (Erik Redwood Dep. at 20-22).

5.    Subsequently, Plaintiff Erik Redwood has sought to have his Pardon amended to include expungement of the criminal record.  Plaintiff Erik Redwood believes that an affidavit from Mr. Welch admitting the purported inadequacies of Mr. Welch's representation of him would aid him in obtaining the relief he seeks.  Consequently, after 1990, if Plaintiff Erik Redwood saw Mr.

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

[1]  Certain witnesses were deposed both in this case and in the state case between Erik Redwood and Harvey Welch.  Where the exhibit is a deposition transcript from the state case, the cite includes a date.

Welch he would request that Mr. Welch sign an affidavit.  (Erik Redwood Dep. at 19-22, 55-57, 99).

6.      When confronting Mr. Welch, Plaintiff Erik Redwood would, at times, call Mr. Welch a "shoeshine boy".  (Erik Redwood Dep. at 23).

7.      On October 1, 1998, an incident occurred between Plaintiff Erik Redwood and Mr. Welch.  (Pls.' Third Am. Compl. ¶ 10); (Welch Dep. at 6).  After the incident, Plaintiff Erik Redwood complained to the Urbana Police Department.  (Pls.' Third Am. Compl. ¶ 11); (Erik Redwood Dep. at 49).  Plaintiff Erik Redwood gave a statement to Officer Richard Surles.  (Erik Redwood Dep. at 49).  Later that evening, Mr. Welch was interviewed by Officer Surles.  (7/5/01 Welch Dep. at 13); (Welch Dep. at 7).  Mr. Welch told Officer Surles what happened between Plaintiff Erik Redwood and himself.  (Welch Dep. at 22).

8.      Officer Surles prepared a police report and closed the case without any charges being filed.  (Pls.' Third Am. Compl. ¶ 11).

9.      On July 20, 1999, Plaintiff Erik Redwood filed a civil lawsuit against Mr. Welch, in the Circuit Court of Champaign County, alleging the civil torts of assault, battery, false imprisonment and trespass.  Plaintiff Erik Redwood's Complaint arose from the October 1, 1998 incident between himself and Mr. Welch.  (Pls.' Third Am. Compl. ¶ 12); (Welch Dep. at 7).

10.     On September, 1, 1999, Plaintiff Jude Redwood sent Mr. Welch a demand letter on behalf of her client, Plaintiff Erik Redwood.   (7/5/01 Welch Dep. at 43, Exh. 3).

11.     Plaintiff Jude Redwood is an attorney, practicing in the Circuit Court of the Sixth Judicial Circuit, Champaign County.  She is the wife of Plaintiff Erik Redwood. (Pls.' Third Am. Compl. ¶ 4).

12.     Mr. Welch interpreted Plaintiff Jude Redwood's demand letter as threatening further

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

3

harassment and racial insults by Plaintiff Erik Redwood against him unless Mr. Welch agreed to Plaintiff Erik Redwood's demands.  Plaintiff Jude Redwood's demand letter motivated Mr. Welch to speak with the Urbana city attorney to determine whether he could prevent Plaintiff Erik Redwood from harassing him at his house.  (7/5/01 Welch Dep. at 50-51); (Welch Dep. at 63-64).

13.     The Urbana city attorney urged Mr. Welch to report his problems with Plaintiff Erik Redwood to the State's Attorney's Office.  (7/5/01 Welch Dep. at 54).

14.     Subsequently, Mr. Welch visited the State's Attorney's Office and asked for Elizabeth Dobson because he knew that she was one of the State's Attorneys who files charges as part of her duties.  (7/5/01 Welch Dep. at 56).

15.     The meeting had not been previously scheduled.  (Dobson Dep. at 7, attached hereto as Exhibit D).

16.     Elizabeth Dobson is an Assistant State's Attorney with the Macon County, Illinois, State's Attorney's Office.  Prior to her employment with Macon County, she was employed as an Assistant State's Attorney with the Champaign County, Illinois, State's Attorney's Office from May, 1985 to November 30, 2004.  (Dobson Dep. at 4-5).

17.     Mr. Welch does not have a social or personal relationship with Elizabeth Dobson. (Welch Dep. at 26).

18.     During Elizabeth Dobson's meeting with Mr. Welch, Mr. Welch provided her with a letter he had prepared describing the October 1, 1998 incident (Dobson Dep. at 6) and informed her that on October 1, 1998, Plaintiff Erik Redwood yelled at him across a street, "How long are you going to be a shoe-shine boy?", and that as a result, he felt alarmed, disturbed, and provoked. (Dobson Aff. ¶ 8, attached hereto as Exhibit E).  Mr. Welch, who is an African-American, stated that he considered the term "shoe-shine boy" to be a racial slur.  (Dobson Aff. ¶ 9).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

19.     Mr. Welch stated that the October 1, 1998 incident was not an isolated occurrence and that on prior occasions Plaintiff Erik Redwood had harassed and insulted him.  Mr. Welch described a previous incident during which Plaintiff Erik Redwood called Mr. Welch a "nigger". (Dobson Aff. ¶¶ 10, 11).

20.     Elizabeth Dobson found Mr. Welch to be credible.  (Dobson Aff ¶ 12).

21.     Elizabeth Dobson asked Mr. Welch whether a police report had been prepared concerning the October 1, 1998 incident and Mr. Welch indicated that there had been.  (Dobson Aff. ¶ 13).

22.     During Elizabeth Dobson's meeting with Mr. Welch, Elizabeth Dobson may have advised Mr. Welch that Grand Jury presentations are conducted by having an investigator of the crime testify rather than the victim of the crime; that in that context, he may be contacted by someone from the Urbana Police Department; and that he should speak with this person so that he or she may present his case to the Grand Jury.  (10/26/01 Dobson Dep. at 20, 22).

23.     Prior to Mr. Welch visiting Elizabeth Dobson at the State's Attorney's Office, Elizabeth Dobson had never spoken with Mr. Welch concerning the actions and conduct of Plaintiff Erik Redwood.  (10/26/01 Dobson Dep. at 17, attached hereto as Exhibit F).

24.     After Elizabeth Dobson met with Mr. Welch, she requested Officer Surles' police report.  (Dobson Dep. at 7).

25.     Elizabeth Dobson obtained Officer Surles' police report and reviewed it prior to September 14, 1999.  (Dobson Aff. ¶ 15); (Dobson Dep. at 9-10).

26.     After speaking with Mr. Welch and reviewing his letter, Elizabeth Dobson determined that there was probable cause to either arrest Plaintiff Erik Redwood or to initiate judicial proceedings against him for the offense of Hate Crime.  (Dobson Aff. ¶ 17).

HeylRoyster
Voelker
&Allen

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

27.     Elizabeth Dobson elected to seek an indictment of Plaintiff Erik Redwood for the offense of Hate Crime.  (Dobson Aff. ¶ 18).

28.     Elizabeth Dobson elected to present the case to the Champaign County Grand Jury because she believed that the Hate Crime statute has a community input component.  Specifically, Elizabeth Dobson understood that words can be used in different contexts and have different meanings, and she thought that it would be appropriate to have the Grand Jury determine whether the words allegedly uttered by Plaintiff Erik Redwood fit within the Hate Crime statute.  (Dobson Dep. at 33-34).

29.     Marvin Gerstein is an attorney practicing in the Circuit Court of the Sixth Judicial Circuit, Champaign County (Pls.' Third Am. Compl. ¶ 6) who later entered his appearance on behalf of Harvey Welch in the civil case involving Mr. Welch and Plaintiff Erik Redwood.  (Pls.' third Am. Compl. ¶ 13); (Welch Dep. at 8).

30.     Mr. Gerstein does not now hold any personal animus against Plaintiffs Jude or Erik Redwood.  (Gerstein Dep. at 87, attached hereto as Exhibit G).  Mr. Gerstein has never had any ill will against Plaintiffs Jude or Erik Redwood.  (Gerstein Dep. at 89).

31.     Mr. Gerstein and Elizabeth Dobson do not have a social or personal relationship.  (Gerstein Dep. at 126-27); (Dobson Dep. at 22-23).

32.     Elizabeth Dobson does not recall any conversations with Mr. Gerstein prior to the indictment of Plaintiff Erik Redwood.  (Dobson Dep. at 60).

33.     Mr. Welch did not speak to Mr. Gerstein about getting Plaintiff Erik Redwood charged with a crime.  (Welch Dep. at 68).

34.     Mr. Gerstein did not speak to Elizabeth Dobson about charging Plaintiff Erik Redwood with a crime.  (Gerstein Dep. at 107).  Mr. Gerstein has not spoken to anyone about

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

charging Plaintiff Erik Redwood with a crime.  (Gerstein Dep. at 108).

   35.  After Elizabeth Dobson received Officer Surles' police report, she telephoned the head of investigations at the Urbana police department, Lieutenant Michael Metzler, to request the assignment of an investigator from the Urbana Police Department to the case.  (Dobson Dep. at 5-7).

   36.  Elizabeth Dobson does not have a social or personal relationship with Lieutenant Metzler.  (Dobson Dep. at 23).

   37.  Troy Phillips, then detective for the Urbana Police Department, was assigned to Mr. Welch's case.  (Dobson Aff. ¶ 19); (Dobson Dep. at 10); (Phillips Dep. at 6, attached hereto as Exhibit H).

   38.  Mr. Phillips is a state police officer special agent.  He works in the state police investigations division.  Mr. Phillips was employed by the Urbana Police Department from March, 1990, to March, 2000.  From approximately 1996 to 2000, Mr. Phillips was a Detective and briefly a Sergeant in the investigations division of the Urbana Police Department.  (Phillips Dep. at 4).

   39.  Mr. Phillips has never held any personal animosities toward Plaintiffs Jude or Erik Redwood for any reason.  Indeed, the first time he ever saw Plaintiffs Jude or Erik Redwood is when he walked into Plaintiff Jude Redwood's former office for his deposition on October 24, 2000. (Phillips Dep. at 4, 5, 83, 87).

   40.  Mr. Phillips does not have a social or personal relationship with Mr. Gerstein, Elizabeth Dobson, or Harvey Welch.  (Phillips Dep. at 82-83).

   41.  Mr. Gerstein is only familiar with Mr. Phillips as an Urbana Police Officer who was listed as a witness in the criminal case.  (Gerstein Dep. at 102).

   42.  Elizabeth Dobson met with Mr. Phillips and asked him to interview Mr. Welch.

HEYLROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

(Dobson Dep. at 11).

43.   Elizabeth Dobson asked Mr. Phillips to interview Mr. Welch because Grand Jury presentations are done through hearsay presentations by investigating officers.  (10/26/01 Dobson Dep. at 20, 22, 34); (Dobson Aff. ¶ 21).  Although Officer Surles investigated the October 1, 1999 incident, Mr. Welch had provided information to Elizabeth Dobson suggesting an offense other than what was documented in Officer Surles' police report, and Elizabeth Dobson needed an investigator to testify before the Grand Jury regarding that information.  (Dobson Dep. at 13, 29).

44.   To obtain an indictment, it is routine practice to have an investigator of the crime testify before the Grand Jury rather than the victim of the crime.  (Dobson Aff. ¶ 21).

45.   As part of his investigation, Mr. Phillips reviewed Officer Surles' police report.  (Phillips Dep. at 9).

46.   On September 14, 1999, Mr. Phillips met with Mr. Welch at Mr. Welch's office.  (Welch Dep. at 15); (7/5/01 Welch Dep. at 59); (Phillips Dep. at 8, 23).  During Mr. Phillips' meeting with Mr. Welch, Mr. Phillips and Mr. Welch spoke about the situation between Mr. Welch and Plaintiff Erik Redwood.  (7/5/01 Welch Dep. at 59).

47.   Mr. Phillips prepared a police report summarizing his conversation with Mr. Welch.  (Phillips Dep. at 8).

48.   Mr. Gerstein has never talked to Mr. Phillips regarding Mr. Phillips' investigation.  (Gerstein Dep. at 135).

49.   On or about September 17, 1999, Mr. Gerstein entered his appearance as attorney for Mr. Welch in the civil case involving Mr. Welch and Plaintiff Erik Redwood.  (Pls.' Third Am. Compl. ¶ 13); (Welch Dep. at 8).

50.   The Champaign County Grand Jury meets on alternate Thursdays every month.  The

HEYL ROYSTER
VOELKER
& ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

Grand Jury hears between 20 and 35 cases each session.  (Dobson Dep. at 25).

51.     The Grand Jury proceedings in People v. Erik Redwood were held on October 14, 1999.  (10/26/01 Dobson Dep. at 18).

52.     Prior to the October 14, 1999 Grand Jury session, Elizabeth Dobson asked Assistant State's Attorney Duke Harris to cover the Grand Jury session for October 14, 1999 because she had other court engagements, and Mr. Harris agreed.  Elizabeth Dobson did not talk to Mr. Harris about People v. Erik Redwood.  (Dobson Dep. at 28).

53.     On October 14, 1999, Mr. Phillips testified before the Grand Jury.  (Dobson Aff. ¶ 22).

54.     Mr. Phillips never had any conversations with Elizabeth Dobson concerning his testimony before the Grand Jury.  (Phillips Dep. at 11).  Elizabeth Dobson never spoke with Mr. Phillips about what questions would be asked of him.  (Phillips Dep. at 74).

55.     Mr. Phillips never had any conversations with Mr. Harris concerning the substance of his testimony.  (Phillips Dep. at 10-11).  Mr. Harris did not speak to Mr. Phillips about what questions he might ask or what Mr. Phillips' answers to those questions might be.  (Phillips Dep. at 11)

56.     Mr. Phillips does not recall sitting with a State's Attorney preparing for his testimony before the Grand Jury proceedings in People v. Erik Redwood.  (Phillips Dep. at 33).

57.     Mr. Phillips never consulted with an Assistant State's Attorney or the State's Attorney concerning his testimony before the Grand Jury proceedings in People v. Erik Redwood. (Phillips Dep. at 34).

58.     Between October 1, 1999 and November 30, 1999, Mr. Phillips did not engage in any communications with any person regarding the possible dismissal of the case of People v. Eric

HEYL ROYSTER
VOELKER
& ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

Redwood and the conditions upon which dismissal would be based.  (Phillips Dep. at 83-84).  No person ever told Mr. Phillips that they somehow wanted to get Plaintiff Erik Redwood indicted. (Phillips Dep. at 65).

59.     On October 14, 1999, the Champaign County Grand Jury indicted Plaintiff Erik Redwood for a Hate Crime against Mr. Welch, a Class 4 Felony.  (Pls.' Third Am. Compl. ¶ 27); (Dobson Aff. ¶ 23).

60.     The indictment for Hate Crime was based on the predicate offense of Disorderly Conduct which alleged that Plaintiff Erik Redwood "yelled across the street at Harvey Welch, 'How long are you going to be a shoe-shine boy?' in such an unreasonable manner as to alarm and disturb Harvey Welch and provoke a breach of the peace."  (Pls.' Third Am. Compl. ¶ 28).

61.     On November 10, 1999, Plaintiff Erik Redwood was arraigned on the charge of Hate Crime.  (Pls.' Third Am. Compl. ¶¶ 27, 33).

62.     On November 30, 1999, on motion by Elizabeth Dobson, the court entered an Order modifying the terms of Plaintiff Erik Redwood's bond to include a no-contact order with Mr. Welch, with Mr. Welch's residence, and with Mr. Welch's business.  (Pls. Third Am. Compl. ¶¶ 17, 36).

63.     On April 7, 2000, Mr. Gerstein sent Plaintiff Jude Redwood a letter proposing settlement of the civil case involving his client, Mr. Welch, and her client, Plaintiff Erik Redwood. (Gerstein Dep. at 48, Exh. P9).  Mr. Gerstein's letter stated, "I discussed settlement offer with Mr. Harvey Welch and we would propose this settlement.  Upon dismissal of your Second Amended Compliant with prejudice Mr. Welch and I will endeavor to have Assistant State's Attorney Elizabeth Dobson dismiss the pending criminal matters now pending against the Plaintiff."  (Gerstein Dep. at 48); (April 7, 2000 letter, attached hereto as Exhibit GP9).

HEYLROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

10

64.     Prior to dictating his April 7, 2000 letter to Plaintiff Jude Redwood, Mr. Gerstein had not contacted Elizabeth Dobson about the representations he made within his April 7, 2000 letter to Plaintiff Jude Redwood.  (Gerstein Dep. at 58).

65.     Mr. Gerstein never spoke with Elizabeth Dobson regarding settlement of the civil matter.  (Gerstein Dep. at 73).

66.     Elizabeth Dobson does not recall seeing Mr. Gerstein's April 7, 2000 letter to Plaintiff Jude Redwood.  (10/26/01 Dobson Dep. at 12-13).

67.     Mr. Gerstein never discussed dismissal of the criminal matter predicated on the settlement of the civil matter with Elizabeth Dobson.  (Gerstein Dep. at 91).

68.     Mr. Gerstein never discussed dismissal or resolution of the criminal matter with Elizabeth Dobson.  (Gerstein Dep. at 92); (10/26/01 Dobson Dep. at 12).

69.     Elizabeth Dobson never discussed dismissal of the criminal matter with Mr. Gerstein. (Gerstein Dep. at 92); (Dobson Dep. at 25).

70.     Elizabeth Dobson does not recall any communications with anybody concerning the possible dismissal of the criminal case.  (Dobson Dep. at 25).

71.     Mr. Welch did not discuss dismissal of the criminal case pending against Plaintiff Erik Redwood with Elizabeth Dobson.  (Welch Dep. at 42); (Dobson Dep. at 25).

72.     Mr. Welch never discussed with Elizabeth Dobson a plan to use criminal charges against Plaintiff Erik Redwood as leverage to get the civil complaint against him dismissed.  (7/5/01 Welch Dep. at 103-104).

73.     Prior to April 7, 2000, Mr. Gerstein never spoke with the then State's Attorney, John Piland, about the representations he made within his April 7, 2000 letter to Plaintiff Jude Redwood. (Gerstein Dep. at 74).

HEYL ROYSTER
VOELKER
& ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

74.     Subsequently, the case of People v. Erik Redwood was assigned to Assistant State's Attorney Dan Pope because Elizabeth Dobson had two homicide cases scheduled for trial, and she would not be available to prosecute the case of People v. Erik Redwood.  (Dobson Dep. at 38).

75.     On January 4, 2002, People v. Erik Redwood was dismissed.  (Pls. Third Am. Compl. ¶ 39).

76.     On March 27, 2002, the court in the civil matter between Plaintiff Erik Redwood and Mr. Welch granted summary judgment in favor of Plaintiff Erik Redwood on his claims of battery and false imprisonment.  (99-LM-910 Docket Information, attached hereto as Exhibit I).

77.     On June 7, 2004, a jury trial began in the civil matter between Plaintiff Erik Redwood and Mr. Welch.  (99-LM-910 Docket Information).

78.     On June 17, 2004, the jury in the civil matter between Plaintiff Erik Redwood and Mr. Welch retired to deliberate.  While the jury was deliberating, the parties advised the court that the matter had been voluntarily resolved.  By agreement of the parties, the cause was dismissed with prejudice, with each party to bear their own respective costs of suit.  Plaintiff Erik Redwood agreed to release Mr. Welch from any further liability for any and all damages claimed on the summary judgment of battery and the summary judgment of false imprisonment previously entered.  (99-LM-910 Docket Information).

79.     Mr. Phillips has never spoken with Mr. Gerstein regarding the civil or criminal cases involving Mr. Welch and Plaintiff Erik Redwood.  (Phillips Dep. at 72).

80.     Mr. Phillips has never had a telephone call with Mr. Gerstein.  Mr. Gerstein has never sent Mr. Phillips a letter.  Mr. Phillips has never sent Mr. Gerstein a letter.  Mr. Gerstein has never sent Mr. Phillips any notes or memoranda.  (Phillips Dep. at 73).

81.     Mr. Phillips did not receive any notes or memoranda from Elizabeth Dobson.  He

HeylRoyster
Voelker
&Allen

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

did not send any letters to Elizabeth Dobson nor did he send any notes, memoranda, or police reports to her. He did not have any telephone conversations with Elizabeth Dobson. (Phillips Dep. at 75-76).

### III.     APPLICABLE LAW

It is well settled that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983" *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

The Seventh Circuit has read *Imbler* "broadly":

> When determining which type of immunity a prosecutor enjoys, we look to the nature of the function that the prosecutor was performing in the particular case. If a prosecutor's function was quasi-judicial, the prosecutor enjoys absolute immunity. If the function was administrative or investigatory, the prosecutor enjoys only qualified immunity. (citation omitted). Under Illinois law, the State's Attorney, as a member of the executive branch of government, is vested with exclusive discretion in the initiation and management of a criminal prosecution. (citation omitted). This discretion also encompasses the determination of which charges will be brought. (citation omitted).

*Spiegel v. Rabinovitz*, 121 F.3d 251, 256-257 (7th Cir. 1997).

Additionally, the Supreme Court has held that acts undertaken by a prosecutor "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Absolute immunity shields a prosecutor "even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986).

A prosecutor is entitled to qualified immunity, and may avoid liability under Section 1983, when her conduct does not violate a clearly established constitutional right of which a reasonable

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

person would have known.  *Wilson v. Formigoni*, 42 F.3d 1060, 1064-65 (7th Cir. 1994).  When the affirmative defense of qualified immunity is properly raised, courts use a two-step analysis: (1) Does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?  *Id.*

## IV.    ARGUMENT

### A.    Elizabeth Dobson is Absolutely Immune from this Suit.

Elizabeth Dobson is entitled to absolute immunity from Counts I through IV of Plaintiffs' Third Amended Complaint because the basis of each of these constitutional claims is that Elizabeth Dobson wrongly instituted and continued a criminal prosecution against Plaintiff Erik Redwood.

In Counts I through IV, Plaintiff Erik Redwood alleges that "Elizabeth Dobson, acting in a purely investigative function and not in a prosecutorial function, ordered, directed and supervised Defendant Troy R. Phillips in a supplemental police investigation, which was an actual step in furtherance of said conspiracy."  (Pls.' Third Am. Compl. ¶¶ 47, 56, 65, 75).  However, the gravamen of each of Plaintiff's constitutional claims is that Elizabeth Dobson and other Defendants conspired to willfully violate Plaintiff's constitutional rights as guaranteed under the United States Constitution in that said Defendants, through a meeting of the minds, entered into a course of action which was calculated to violate Plaintiff's rights to free speech (Count I), to petition the government (Count II), to free exercise of religion (Count III), and to equal protection of the law (Count IV) by *wrongfully procuring and continuing a bad faith prosecution against Plaintiff*.  (Pls.' Third Am. Compl. ¶¶ 45, 54, 63, 72).  Thus, Counts I through IV are based on the allegation that Defendants wrongfully instituted and continued a criminal prosecution against Plaintiff Erik Redwood.  Because Elizabeth Dobson is absolutely immune for those actions, summary judgment should be granted in her favor and against Plaintiff Erik Redwood as to Counts I through IV.

HEYL ROYSTER
VOELKER
& ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

14

The fact that Counts I through IV allege conspiracy does not alter the analysis. These claims are based on the initiation and continuing of a prosecution, an act for which Elizabeth Dobson has absolute immunity. Prosecutors do not lose their immunity as a result of allegations of conspiracy to perform actions for which they would otherwise be immune. *Bernal v. Shifflet*, 1995 WL 417552 *4 (N.D.Ill. 1995).

In her actions in seeking an indictment and in prosecuting the case after an indictment was returned, Elizabeth Dobson is entitled to absolute prosecutorial immunity, and that is true regardless of the facts which underlie the indictment.

Moreover, the material undisputed facts establish that Elizabeth Dobson's conduct with regard to Mr. Phillips is the sort of preliminary pre-prosecution activity that directly relates to the advocate's role and warrants absolute immunity. The material undisputed facts establish that after meeting with Mr. Welch, Elizabeth Dobson elected to seek an indictment of Plaintiff Erik Redwood for the offense of Hate Crime. (Material Undisputed Facts ["MUF"] ¶¶ 26, 27).

Elizabeth Dobson elected to present the case to the Grand Jury because she believed that the Hate Crime statute has a community input component. Specifically, Elizabeth Dobson understood that words can be used in different contexts and have different meanings, and she thought that it would be appropriate to have the Grand Jury determine whether the words allegedly uttered by Plaintiff Erik Redwood fit within the Hate Crime statute. (MUF ¶ 28).

Having decided to seek an indictment, Elizabeth Dobson needed an investigator to present Mr. Welch's case to the Grand Jury because Grand Jury presentations are routinely conducted by having an investigator of the crime testify rather than the victim of the crime. (MUF ¶ 44). Although, Officer Surles investigated the October 1, 1999 incident, Mr. Welch had provided information to Elizabeth Dobson suggesting an offense other than what was documented in Officer

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

Surles' police report, and Elizabeth Dobson needed an investigator to testify before the Grand Jury regarding that information. (MUF ¶ 43). Consequently, Elizabeth Dobson telephoned the head of investigations at the Urbana Police Department, Lieutenant Michael Metzler, to request the assignment of an investigator from the Urbana Police Department to the case, and Mr. Phillips, then detective for the Urbana Police Department, was assigned to Mr. Welch's case. (MUF ¶¶ 35, 37). Elizabeth Dobson met with Mr. Phillips and asked him to interview Mr. Welch so that he could present Mr. Welch's case to the Grand Jury. (MUF ¶¶ 42, 43). Subsequently, Mr. Phillips interviewed Mr. Welch and later testified before the Grand Jury. (MUF ¶¶ 46, 53).

There is no evidence that Elizabeth Dobson ordered, directed, or supervised Mr. Phillips in a supplemental police investigation. To the contrary, Elizabeth Dobson obtained all the facts she needed to seek an indictment of Plaintiff Erik Redwood from Mr. Welch during Mr. Welch's visit with her. Elizabeth Dobson asked Mr. Phillips to interview Mr. Welch because she needed an investigator to present the information that she obtained from Mr. Welch to the Grand Jury, and Lieutenant Metzler assigned Mr. Phillips to perform that function. Asking the investigator who will present the State's case to the Grand Jury to interview the victim of the crime prior to his testimony is so intimately associated with the judicial phase of the criminal process that it qualifies for absolute immunity.

Moreover, the material undisputed facts also establish that Elizabeth Dobson had probable cause to seek an indictment of Plaintiff Erik Redwood for a Hate Crime before she asked Mr. Phillips to interview Mr. Welch. *See Buckley*, 509 U.S. at 274 (stating that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.").

Prior to Mr. Phillips' involvement, Elizabeth Dobson was contacted by Mr. Welch, who

HEYLROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

provided credible information about a potential crime, of which he may have been a victim. Specifically, Mr. Welch advised Elizabeth Dobson that Plaintiff Erik Redwood had on numerous occasions harassed and insulted him, calling him a "shoe-shine boy" and a "nigger", and that as a result, he felt alarmed, disturbed, and provoked.  (MUF ¶¶ 18-20).

> Probable cause exists to arrest a suspect if at the time of arrest the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense.  Probable cause is a commonsense determination, measured under the reasonableness standard.

*Gower v. Vercler*, 377 F.3d 661, 668 (7th Cir. 2004)(citations and internal quotations omitted). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillipo*, 443 U.S. 31, 36 (1979).

The Illinois statute proscribing disorderly conduct reads: "A person commits disorderly conduct when he knowingly does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."  720 Ill. Comp. Stat. Ann. 5/26-1(a)(1) (West 2005).  "In applying this provision, Illinois courts have recognized that the types of conduct intended to be included under this section almost defy definition." *Gower*, 377 F.3d at 669 (citation and internal quotation omitted).  In *Gower*, the Seventh Circuit concluded, as a matter of law, that defendants, arresting officers, had probable cause to arrest plaintiff, suspect, for disorderly conduct where he repeatedly said "fuck you" to his in-laws, and called his father-in-law a "fat son-of-a-bitch" and a coward.  377 F.3d at 670.  The Court found that plaintiff's remarks together plainly represented fighting words, because they were "personally abusive epithets, which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke a violent reaction." *Id. citing Cohen v. California*, 403 U.S. 15, 20 (1971).  Similarly, it was reasonable for

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

Elizabeth Dobson to regard Plaintiff Erik Redwood's repeated calling of Mr. Welch, an African-American male,  a "shoe-shine boy" and a "nigger" over a lengthy period of time as disorderly conduct.

Because Elizabeth Dobson's pre-indictment conduct was related to preparation for the initiation of a prosecution and because it occurred after she had probable cause to indict Plaintiff Erik Redwood, her conduct qualifies for absolute immunity, and summary judgment should be granted in her favor and against Plaintiff Erik Redwood as to Counts I through IV.

The fact that Counts I through IV allege conspiracy does not alter the analysis.  These claims are based on activity that directly relates to Elizabeth Dobson's role as an advocate and warrants absolute immunity.  Prosecutors do not lose their immunity as a result of allegations of conspiracy to perform actions for which they would otherwise be immune.  *Bernal*, 1995 WL 417552 *4.

Nonetheless, Plaintiff Erik Redwood cannot present any evidence demonstrating that Elizabeth Dobson conspired with Mr. Welch, Mr. Gerstein, and Mr. Phillips to violate his constitutional rights.

The material undisputed facts establish that Elizabeth Dobson does not have a social or personal relationship with any of the alleged co-conspirators.  (MUF ¶¶ 17, 31, 40).  Although the conflict between Plaintiff Erik Redwood and Mr. Welch dates back to 1982, Mr. Welch had never spoken with Elizabeth Dobson about Plaintiff Erik Redwood's actions and conduct prior to when he visited her at the State's Attorney's Office.  (MUF ¶¶ 1, 23).  The meeting was not pre-scheduled and the only reason Mr. Welch spoke with Elizabeth Dobson was because Mr. Welch knew that she was one of the Assistant State's Attorneys who files charges as part of her duties.  (MUF ¶¶ 14, 15).

After speaking with Mr. Welch and reviewing the letter that he had provided to her,

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

Elizabeth Dobson determined that there was probable cause to seek an indictment of Plaintiff Erik Redwood for the offense of Hate Crime.  (MUF ¶ 26).  Neither Elizabeth Dobson nor Mr. Welch ever spoke with Mr. Gerstein about charging Plaintiff Erik Redwood with a crime.  (MUF ¶¶ 32-34).  Indeed, Mr. Gerstein did not enter his appearance in the civil matter between Plaintiff Erik Redwood and Mr. Welch until after Elizabeth Dobson had decided to seek an indictment of Plaintiff Erik Redwood.  (MUF ¶ 49).

After Elizabeth Dobson had determined that there was probable cause to seek an indictment of Plaintiff Erik Redwood for the offense of Hate Crime, she asked Mr. Phillips to interview Mr. Welch.  (MUF ¶¶ 26, 35, 42).  Mr. Phillips interviewed Mr. Welch and prepared a police report summarizing his conversation with Mr. Welch.  (MUF ¶¶ 46, 47).  Mr. Phillips and Mr. Gerstein never spoke about Mr. Phillips' investigation or about the civil or criminal matters involving Plaintiff Erik Redwood and Mr. Welch.  (MUF ¶¶ 48, 79).

The Grand Jury proceedings in People v. Erik Redwood were held on October 14, 1999 and Assistant State's Attorney Duke Harris appeared on behalf of the State.  (MUF ¶¶ 51, 52). Elizabeth Dobson asked Assistant State's Attorney Duke Harris to cover the Grand Jury session that day because she had other court engagements, and Mr. Harris agreed.  (MUF ¶ 52).  Elizabeth Dobson did not talk to Mr. Harris about People v. Erik Redwood.  (MUF ¶ 52).

On October 14, 1999, Mr. Phillips testified before the Grand Jury.  (MUF ¶ 53).  Prior to his Grand Jury testimony, Mr. Phillips never had any conversations with Elizabeth Dobson, Mr. Harris, or any other Assistant State's Attorney concerning his testimony.  (MUF ¶¶ 54-57). Between October 1, 1999 and November 30, 1999, Mr. Phillips did not engage in any communications with any person regarding the possible dismissal of People v. Erik Redwood and the conditions upon which dismissal would be based, and no person ever told Mr. Phillips that they

HeylRoyster
Voelker
&Allen

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

somehow wanted to get Plaintiff Erik Redwood indicted.  (MUF ¶ 58).  On October 14, 1999, the Grand Jury indicted Plaintiff Erik Redwood.  (MUF ¶ 59).

By April, 2000, the civil matter between Plaintiff Erik Redwood and Mr. Welch had been ongoing for nearly a year and Mr. Gerstein had entered his appearance on behalf of Mr. Welch. (MUF ¶ 9, 49).  On April 7, 2000, Mr. Gerstein sent Plaintiff Jude Redwood a letter proposing a settlement of the civil matter involving his client, Mr. Welch, and her client, Plaintiff Erik Redwood. Mr. Gerstein's letter stated, "I discussed settlement offer with Mr. Harvey Welch and we would propose this settlement.  Upon dismissal of your Second Amended Complaint with prejudice Mr. Welch and I will endeavor to have Assistant State's Attorney Elizabeth Dobson dismiss the pending criminal matters now pending against the Plaintiff."[2]  (MUF ¶ 63).

Prior to dictating his April 7, 2000 letter to Plaintiff Jude Redwood, Mr. Gerstein had not contacted Elizabeth Dobson about the representation he made within his letter.  (MUF ¶ 64). Indeed, Mr. Gerstein and Elizabeth Dobson never spoke about dismissal of the criminal matter, settlement of the civil matter, or dismissal of the criminal matter predicated on settlement of the civil matter, and Mr. Welch never discussed with Elizabeth Dobson a plan to use criminal charges against Plaintiff Erik Redwood as leverage to get the civil complaint against him dismissed.  (MUF ¶¶ 65-72).

Indeed, there is no evidence that Mr. Welch and/or Mr. Gerstein ever planned to use criminal charges against Plaintiff Erik Redwood as leverage to get the civil complaint against Mr. Welch dismissed.  To the contrary, the material undisputed facts establish that Mr. Welch alerted Elizabeth Dobson to Plaintiff Erik Redwood's behavior only after he received a letter from Plaintiff

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

---

[2]  Further, any rational reading of the letter leads the reader to the conclusion that Mr. Gerstein is promising in the future to contact Ms. Dobson, and attempt to persuade her to dismiss the case.  It does not suggest in any way that such a conversation has occurred.

Erik Redwood's wife that he interpreted as a threat of further harassment by Plaintiff Erik Redwood. (MUF ¶¶ 10-14). Thus, Mr. Welch spoke with Elizabeth Dobson because he desired to protect himself and his family from a perceived threat and not because he thought he could use a criminal charge as leverage to obtain a dismissal of a civil complaint against him. Moreover, Mr. Gerstein did not enter his appearance in the civil matter until after Mr. Welch had spoken with Elizabeth Dobson. (MUF ¶ 49).

Subsequently, the case of People v. Erik Redwood was assigned to Assistant State's Attorney Dan Pope because Elizabeth Dobson had two homicide cases scheduled for trial, and she would not be available to prosecute the case. (MUF ¶ 74).

The foregoing material undisputed facts demonstrate that Elizabeth Dobson did not become involved in the conflict between Plaintiff Erik Redwood and Mr. Welch until after September 1, 1999; that her involvement thereafter was limited to pre-prosecution and prosecution activity which occurred in the course of her role as an advocate for the State; and that she did not conspire with Mr. Welch, Mr. Gerstein and Mr. Phillips to violate Plaintiff's constitutional rights. Elizabeth Dobson's actions are entitled to the protections of absolute immunity and summary judgment should be entered in her favor and against Plaintiff Erik Redwood as to Counts I through IV.

**B.    To the extent Elizabeth Dobson engaged in purely investigative conduct, her actions are protected by qualified immunity.**

Elizabeth Dobson's actions are protected by qualified immunity because her alleged conduct does not set out a constitutional violation.

As a threshold matter, to avoid absolute immunity, Plaintiff alleges that Elizabeth Dobson engaged in purely investigative conduct. However, as discussed above, the gravamen of each of Plaintiff's constitutional claims is the alleged bad faith prosecution. A closer look at Plaintiffs' Third Amended Complaint indicates that it was entry of a no-contact order during the course of the

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

21

alleged bad faith prosecution that allegedly deprived Plaintiff of his right to free speech and his right to free exercise of religion (Pls.' Third Am. Compl. ¶¶ 36, 45, 63); and it was the institution of a bad faith prosecution that allegedly deprived Plaintiff of his right to petition the government and his right to equal protection of the laws (Pls.' Third Am. Compl. ¶¶ 54, 72). Plaintiff cannot have it both ways. If the conduct is investigative, it cannot form the basis for any of Plaintiff's constitutional claims because merely asking an investigator to interview a victim of a crime does not violate a clearly established constitutional right; and if the conduct is prosecutorial, Elizabeth Dobson is absolutely immune from liability.

Nonetheless, as discussed above, Plaintiff cannot demonstrate that Elizabeth Dobson conspired with others to violate Plaintiff's constitutional rights. Indeed, the material undisputed facts establish that Elizabeth Dobson did not conspire with Mr. Welch, Mr. Gerstein, and Mr. Phillips to violate Plaintiff's constitutional rights. Moreover, Section 1983 does not punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). Elizabeth Dobson's conduct did not violate Plaintiff's constitutional rights.

Counts I and III allege that Elizabeth Dobson conspired to violate Plaintiff Erik Redwood's First Amendment rights to free speech and free exercise of religion, respectively, when she "entered into a course of action which was calculated to and effectively did stop the plaintiff from speaking to Harvey Welch . . . by wrongfully procuring and continuing a bad faith prosecution . . . against the plaintiff". (Pls.' Third Am. Compl. ¶¶ 45, 63). Plaintiff clarifies this allegation in Paragraph 17, which alleges as follows:

> Elizabeth Dobson entered into an agreement that defendant Elizabeth Dobson would file false and unfounded criminal charges against plaintiff Reverend Erik Redwood as retaliation for the civil lawsuit . . . and for the specific purpose of freezing Reverend Erik Redwood's right to speak to defendant Harvey Welch in public,

HEYLROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

through a court-ordered no-contact order.

(Pls.' Third Am. Compl. ¶ 17)(emphasis added).

Thus, these claims are based on the allegation that the "court-ordered no-contact order" violated Plaintiff's rights to free speech and free exercise of religion.

Plaintiff's right to free speech was not violated because the no-contact order was an appropriate time, place, and manner restriction.

Proper time, place, or manner restrictions must be narrowly tailored to serve a significant government interest unrelated to the suppression of free expression and leave open alternative channels for communication. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Plaintiff was charged by indictment with the offense of Hate Crime and the alleged victim was Harvey Welch. (MUF ¶ 59). Protecting the welfare of citizens is a significant state interest. The no-contact order was content neutral - no contact - whether profession of love, screams of hate or anything in between. The interest to be served was the safety, security, and peace of mind of Mr. Welch. It was narrowly tailored by focusing on Mr. Welch and specific areas of no contact - Mr. Welch's home and place of work. It left open ample alternative channels of communications, by leaving open every alternative channel so long as no contact was made with Mr. Welch and the proscribed areas of no contact were not violated.

Moreover, Mr. Welch's home and place of work are private fora. The government may adopt reasonable regulations limiting access to homes and private places of work for First Amendment purposes - pursuant to its interest in protecting privacy.

Additionally, a reasonable person, knowing what Elizabeth Dobson knew, could have believed that she was acting in accordance with Plaintiff's clearly established rights by allegedly acting to prevent further contact between Plaintiff and Mr. Welch during the pendency of the

HEYL ROYSTER
VOELKER
& ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

23

prosecution of Plaintiff for a Hate Crime.  Prior to engaging in any of the conduct claimed by Plaintiff to be in violation of his rights, Elizabeth Dobson knew that Plaintiff's speech had previously alarmed and disturbed Mr. Welch and had provoked a breach of the peace.  (MUF ¶¶ 18, 19).  Such speech is not protected by the First Amendment.  *See Gower*, 377 F.3d at 669-671.

Count III fails on similar grounds.  Plaintiff alleges that he "enjoys a First Amendment right to the free exercise of his religion without governmental interference."  (Pls.' Third Am. Compl. ¶ 62).  Plaintiff further alleges that "[u]nder his religion, he was and is required to teach truth and righteousness to all persons, including defendant Harvey Welch."  (Pls.' Third Am. Compl. ¶ 62).  In other words, Plaintiff asserts that a criminal law refraining Plaintiff from contact with Mr. Welch as a condition of Plaintiff's bail cannot be constitutionally applied to him because his religion commands the practice.  As the Supreme Court has recognized, "[t]o permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself."  *Employment Division. v. Smith*, 494 U.S. 872, 879 (1990) *citing Reynolds v. United States*, 98 U.S. 145, 166-67 (1879)

> [The Supreme Court has] never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate.  On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition.  As described succinctly by Justice Frankfurter in *Minersville School Dist. Bd. of Ed. v. Gobitis*, 310 U.S. 586, 594-595 (1940): "Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities (footnote omitted)."

*Id.* at 878-79.

Illinois criminal law permits a judge to impose conditions of a bail bond of a person released prior to conviction, including refraining from approaching or communicating with particular

HEYL ROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

persons.  725 ILCS 5/110-10.  Such a no-contact order was entered against Plaintiff during the course of his prosecution.  (MUF ¶ 62).

The law and the no-contact order do not offend the Constitution because they are generally applicable and religiously neutral.  *See Smith*, 494 U.S. 872 (no religious exemption required from regulation prohibiting use of peyote where religious beliefs required use of peyote during religious ceremonies); *Bob Jones University v. United States*, 461 U.S. 574 (1983)(no religious exemption required from regulation denying tax exempt status to schools that discriminate on the basis of race where religious school's tenets require certain separations of races); *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985)(no religious exemption required from regulation requiring that employers comply with federal minimum wage laws where employer argued that minimum wages interferes with members' religious desires to work without compensation); *United States v. Lee*, 455 U.S. 252 (1982)(no religious exemption required from regulation requiring that employers pay Social Security taxes where person's religious beliefs prohibited payment and receipt of Social Security type payments); *Jimmy Swaggert Ministries v. Board of Equalization of California*, 493 U.S. 378 (1990)(no religious exemption required from sales and use taxes as applied to sales of goods and literature by religious group).

Moreover, the law and no-contact order are valid because they are necessary to protect the public from a person alleged to have committed a crime, a compelling state interest.

Finally, the causal link between the no contact order and Plaintiff's free exercise of religion is tenuous at best.  Indeed, it is inconceivable that a reasonable person, knowing what Elizabeth Dobson knew, could have believed that the mere act of preventing contact between Plaintiff and Mr. Welch would result in a violation of Plaintiff's right to free exercise of religion.

Count IV fails because there is no evidence that Plaintiff is a member of a suspect class and

**Heyl Royster**
**Voelker**
**&Allen**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

25

that he was treated differently from those similarly situated.  Nor can Plaintiff demonstrate discriminatory intent.  To the contrary, Plaintiff alleges that Elizabeth Dobson's actions were "motivated by the . . .desire[] to subject the Plaintiff to undeserved jeopardy in the form of humiliation, embarrassment, economic loss, and the unwarranted threat of felony conviction, imprisonment and monetary fines and court costs."  (Pls.' Third Am. Compl. ¶ 78).

Plaintiff also alleges that Elizabeth Dobson's actions  "[were] done as a punishment for the plaintiff's exercise of his First Amendment rights."  (Pls.' Third Am. Compl. ¶ 77).  However, the right to be free from retaliation may not be vindicated under the Equal Protection Clause. *Grossbaum v. Indianapolis-Marion County Building Authority*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996).

Count II fails because Plaintiff cannot demonstrate an actual deprivation of his right to petition the government resulting from Elizabeth Dobson's actions.  In *Reichenberger v. Pritchard*, 660 F.2d 280 (7th Cir. 1981), plaintiffs, nightclub owners, alleged that defendants conspired to eliminate nude dancing in their nightclubs by interfering in various municipal administrative proceedings.  The Seventh Circuit held that plaintiffs failed to state a civil rights cause of action in light of the fact that neither plaintiffs' expressive activities nor business activities had been interrupted.  Likewise, Plaintiff's civil lawsuit against Mr. Welch was not interrupted by Elizabeth Dobson's conduct.  Indeed, on March 27, 2002, Plaintiff was granted summary judgment on his claims of battery and false imprisonment; on June 7, 2004, a jury trial began; and on June 17, 2004, while the jury was deliberating, Plaintiff agreed to a voluntary dismissal with prejudice of his remaining claims, and agreed to release Mr. Welch from any and all liability for his claims of battery and false imprisonment.  (MUF ¶¶ 76-78).

Because Elizabeth Dobson did not violate Plaintiff Erik Redwood's clearly established

HEYLROYSTER
VOELKER
&ALLEN

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

constitutional rights, she is entitled to qualified immunity and summary judgment should be entered in her favor and against Plaintiff Erik Redwood as to Counts I through IV.

      **C.**    **The material undisputed facts establish that Elizabeth Dobson did not conspire with Mr. Welch, Mr. Gerstein, and Mr. Phillips to violate Plaintiff Erik Redwood's constitutional rights, and that Plaintiff Erik Redwood's constitutional rights were not violated.**

Because the material undisputed facts establish that Elizabeth Dobson did not conspire with Mr. Welch, Mr. Gerstein, and Mr. Phillips to violate Plaintiff's constitutional rights, and that Plaintiff Erik Redwood's constitutional rights were not violated, summary judgment should be granted in favor of Elizabeth Dobson and against Plaintiff Erik Redwood as to Counts I through IV. *See supra*.

## V.    CONCLUSION

For the foregoing reasons, Elizabeth Dobson respectfully requests that this Court enter an Order granting summary judgment in her favor and against Plaintiff Erik Redwood as to Counts I through IV, together with such relief as the Court deems appropriate.

ELIZABETH DOBSON, CHAMPAIGN COUNTY ASSISTANT STATE'S ATTORNEY, in her Official and Individual Capacities, Defendant

s/ Keith B. Hill
Attorney for Defendant
Heyl, Royster, Voelker & Allen
102 E. Main Street, Suite 300
P.O. Box 129
Urbana, IL 61803-0129
217-344-0060 Phone
217-344-9295 Fax
E-mail: khill@hrva.com

s/ Richard P. Klaus
Attorney for Defendant
Heyl, Royster, Voelker & Allen
102 E. Main Street, Suite 300
P.O. Box 129
Urbana, IL 61803-0129
217-344-0060 Phone
217-344-9295 Fax
E-mail: rklaus@hrva.com

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060

## **TYPE VOLUME CERTIFICATION**

Pursuant to CDIL-LR 7.1(B)(2), Richard P. Klaus certifies that this memorandum complies with the type volume limitation, as it contains 5,146 words or 28,059 characters, exclusive of those contained in this certificate and in the material undisputed facts statement.  Pursuant to the local rule, counsel relied on the word count of Corel Word Perfect 8.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mrs. Jude M. Redwood
Redwood Law Office
P.O. Box 864
St. Joseph, IL 61873

Mr. David Rumley
Attorney at Law
401 W. Elm St.
Urbana, IL 61801

Mr. Charles Danner
Attorney at Law
P.O. Box 6502
Peoria, IL 61601-6502

Mr. Stanley L. Morris
Quinn, Johnston, Henderson & Pretorius
205 S. Fifth Street, Suite 900
Springfield, IL 62701

Mr. Roger Webber
Beckett & Webber
P.O. Box 17160
Urbana, IL 61803-7160

Mr. Joel Fletcher
Assistant State's Attorney
Champaign County State's Attorney's Office
1776 E. Washington St.
Urbana, IL 61801

s/ Richard P. Klaus
Attorney for Defendants
Heyl, Royster, Voelker & Allen
Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
217-344-0060 Phone
217-344-9295 Fax
E-mail:  rklaus@hrva.com

HeylRoyster
Voelker
&Allen

Suite 300
102 E. Main Street
P.O. Box 129
Urbana, IL 61803-0129
Fax (217) 344-9295
(217) 344-0060