## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| REVEREND ERIK REDWOOD and<br>JUDE MARIE REDWOOD,<br>               **Plaintiffs,**<br>   v.<br><br>ELIZABETH DOBSON, CHAMPAIGN<br>COUNTY ASSISTANT STATE'S<br>ATTORNEY, in her individual capacity;<br>MARVIN IRA GERSTEIN; HARVEY CATO<br>WELCH; TROY R. PHILLIPS, in his<br>individual capacity; and the CITY OF<br>URBANA,<br>               **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 00-2305** |

## <u>OPINION</u>

This case is before this court for ruling on four Motions for Summary Judgment (#164, #166, #168, #173) filed by Defendant Elizabeth Dobson, Defendant Marvin Ira Gerstein, Defendant Troy R. Phillips, and Defendant Harvey Cato Welch, respectively. Other motions related to the Motions for Summary Judgment are before this court for ruling as well. This court has carefully reviewed the arguments of the parties and all of the documents submitted by the parties. Following this careful and thorough review, this court rules as follows: (1) Defendants' Motions for Summary Judgment (#164, #166, #168, #173) are GRANTED; (2) the Motion to Reconsider and Vacate the Court's Order Granting Defendant Welch's Motion for Extension of Time to File Motion for Summary Judgment (#171) and Motion for Discovery Sanctions (#191) filed by Plaintiffs, Reverend Erik Redwood and Jude Marie Redwood are DENIED; (3) Plaintiffs' Motion to Strike and for Sanctions (#177) is GRANTED in part and DENIED in part; and (4) Defendant Gerstein's Motion

to Amend and Clarify (#190) is GRANTED.

FACTS

The following recitation of the facts includes only the facts this court finds are material to the issues raised in this case. This court has also included only facts which have evidentiary support in the record. This court further notes that, where Plaintiffs have challenged facts listed as undisputed by Defendants, but have presented no evidence that raises an issue of fact, this court has accepted those facts as undisputed.

Defendant Harvey Cato Welch (Welch) is an attorney who has been practicing law for nearly 25 years. Welch is African American. In 1982, Welch represented Plaintiff Erik Redwood (Redwood) in a criminal case.[1] Redwood is Caucasian. Redwood's case eventually went to trial, and Redwood was convicted of battery. Redwood believes that Welch did not adequately represent him. In 1990, then-Governor James Thompson granted a pardon to Redwood. Subsequently, Redwood sought to have his pardon amended to include expungement of the criminal record. Redwood believes that an affidavit from Welch admitting the purported inadequacies of Welch's representation of him would aid him in obtaining the relief he seeks. Consequently, after 1990, Redwood requested an affidavit from Welch on several occasions. When confronting Welch, Redwood would, at times, call Welch a "shoe-shine boy." Welch testified that Redwood had also called him "nigger" and "boy." Redwood denies that he ever called Welch "nigger." Welch

---

[1] This court notes that Redwood sued as "Reverend" Erik Redwood. At his deposition taken on September 13, 2001, Redwood was asked his job occupation and testified, "I'm a Renaissance man, I'm a reverend, I'm a paralegal in my wife's office, I'm a skilled craftsman in carpentry and electronics, and I teach those to people who need to learn employment." Redwood later explained that he was ordained as a Buddhist reverend during the Vietnam war by a professor at the Asian studies department of the University of Illinois.

testified that he felt "the use of the term boy, shoe shine or otherwise, directed toward an African-American male, adult male, is a racial pejorative."

On October 1, 1998, an incident occurred between Redwood and Welch.  Welch returned home that day and Redwood was working at a home across the street.  Redwood yelled over to Welch and called him a shoe-shine boy.[2]  Welch walked across the street and told Redwood he wasn't going to be insulted and talked to that way at his house.  An argument between the two followed.  During the argument, Redwood started getting into his van and Welch leaned against the door of the van, pinning Redwood in the door.  According to Redwood, Welch slammed the van door on him three times.  Redwood testified that he received a scrape on his knuckles.  After the incident, Redwood complained to the Urbana Police Department.  Redwood gave a statement to Officer Richard Surles.  Later that evening, Welch was interviewed by Officer Surles and gave his version of the incident between Redwood and himself.  Officer Surles prepared a police report and closed the case without any charges being filed.  Officer Surles testified that he concluded that a battery had occurred but not a "significant" one and so decided not to arrest anyone for battery.

On July 20, 1999, Redwood filed a civil lawsuit against Welch in the circuit court of Champaign County, alleging the civil torts of assault, battery, false imprisonment and trespass.  This lawsuit was based upon the October 1, 1998, incident.  Redwood's wife, Plaintiff Jude Redwood (Attorney Redwood), is an attorney and practices law in Champaign County.  On September 1, 1999, Attorney Redwood sent Welch a demand letter regarding the civil lawsuit.  Welch interpreted

---

[2] Redwood admitted saying "shoe-shine boy" that day (and on other occasions), but stated that he did not say those words until later, during the argument with Welch.  Redwood also testified that there were no racial overtones to his asking Welch "when he's going to stop being a shoe shine boy" and that he takes great offense at being accused of being a racist.

Attorney Redwood's letter as threatening further harassment and racial insults by Redwood against him unless he agreed to Redwood's settlement demand. Attorney Redwood's demand letter motivated Welch to speak with the Urbana city attorney to determine whether he could prevent Redwood from harassing him at his house. The Urbana city attorney urged Welch to report his problems with Redwood to the State's Attorney's office.

Subsequently, Welch spoke to Defendant Elizabeth Dobson (Dobson) at the State's Attorney's office. Dobson was employed as an assistant State's Attorney in Champaign County from May 1985 to November 2004. Welch testified that he spoke to Dobson because he knew she was one of the State's Attorneys who filed charges as part of her duties. Dobson testified that she and Welch do not have a personal or social relationship. At this meeting, Welch provided Dobson with a letter he had prepared which described the October 1, 1998, incident. Welch told Dobson that, on that date, Redwood yelled at him across a street, "How long are you going to be a shoe-shine boy?" Welch reported that he felt alarmed, disturbed and provoked. Welch stated that he considered the term "shoe-shine boy" to be a racial slur. Welch also reported that Redwood had harassed and insulted him on prior occasions. Dobson found Welch to be credible. Dobson told Welch that he may be contacted by someone from the Urbana Police Department. She told Welch that he should speak to this person so that he or she could present Welch's case to the grand jury.

Dobson also obtained and reviewed a copy of Officer Surles' police report about the incident. Dobson determined that there was probable cause to arrest Redwood or to initiate judicial proceedings against him for the offense of hate crime. Dobson elected to present the case to the grand jury. Dobson testified that, because the hate crime statute has a community input component

4

to it, she thought that it would be appropriate to have the grand jury determine whether the words allegedly uttered by Redwood fit within the hate crime statute.  Dobson testified that she felt that a crime had been committed by Redwood and that prosecuting that crime was a good use of prosecutorial resources.

After Dobson received Officer Surles' police report, she telephoned the head of investigations at the Urbana police department, Lieutenant Michael Metzler, to request the assignment of an investigator from the Urbana police department to the case.  Defendant Troy Phillips (Phillips), who was employed by the Urbana police department from March 1990 to March 2000, was assigned to Welch's case.  Phillips testified that he has never held any personal animosities toward Redwood or Attorney Redwood.  Phillips testified that he does not have a social or personal relationship with Gerstein, Dobson or Welch.  After Phillips was assigned to the case, Dobson met with him and asked him to interview Welch.  Dobson testified that, although Officer Surles had originally investigated the incident, Welch had provided information suggesting an offense other than what was documented in Officer Surles' report.  Dobson testified that she needed an investigator to testify before the grand jury regarding that information.  According to Dobson, it is routine practice to have an investigator of the crime testify before the grand jury rather than the victim of the crime.

Phillips testified that he spoke to Dobson and that Dobson wanted him to look at the case to see if any of the activity fell into the criteria of a hate crime.  Phillips testified that he was also trying to ensure that Redwood would not harass Welch at Welch's residence again.  Phillips testified that, as part of his investigation, he reviewed Officer Surles' report and talked to Officer Surles about the report.  Surles testified, however, that he did not talk to Phillips about his report.  Phillips also met

with Welch at Welch's office on September 14, 1999. Phillips and Welch spoke about the situation between Redwood and Welch. Phillips prepared a police report summarizing his conversation with Welch. Phillips testified that Dobson told him not to contact Redwood as part of his investigation.

On September 17, 1999, Defendant Marvin Gerstein (Gerstein) entered his appearance as attorney for Welch in the civil case filed by Redwood. Gerstein is an attorney who practices law in Champaign County. Both Gerstein and Dobson testified that they do not have a social or personal relationship. Gerstein and Welch were personal friends at that time. However, Welch testified that he did not speak to Gerstein about getting Redwood charged with a crime. Gerstein testified that he did not speak to Dobson about charging Redwood with a crime and, in fact, did not speak to anyone about charging Redwood with a crime.

The grand jury proceedings regarding the case against Redwood were held on October 14, 1999. Dobson asked assistant State's Attorney Duke Harris to cover the October 14, 1999, grand jury session because she had other court engagements. At the grand jury proceeding, Phillips testified about the Redwood case. Phillips testified that he did not consult with an assistant State's Attorney or with the State's Attorney concerning his testimony before the grand jury proceedings. However, Harris testified that he had a conversation with Phillips before the grand jury presentation and gave Phillips an idea of the questions he would be asking. On October 14, 1999, the Champaign County grand jury indicted Redwood and charged him with committing a hate crime against Welch, a Class 4 Felony. The indictment for hate crime was based on the predicate offense of disorderly conduct which alleged that Redwood "yelled across a street at Harvey Welch, 'How long are you going to be a shoe-shine boy?' in such an unreasonable manner as to alarm and disturb Harvey Welch and provoke a breach of the peace."

6

On November 10, 1999, Redwood was arraigned on the charge of hate crime.  On November 30, 1999, on motion by Dobson, the court entered an order modifying the terms of Redwood's bond to include a no-contact order with Welch, and with Welch's residence and business.

On April 7, 2000, Gerstein sent Attorney Redwood a letter proposing settlement of the civil case involving Welch and Redwood.  Gerstein's letter stated:

> I discussed settlement offer with Mr. Harvey Welch and we would propose this settlement.  Upon dismissal of your Second Amended Complaint with prejudice Mr. Welch and I will endeavor to have Assistant State's Attorney Elizabeth Dobson dismiss the pending criminal matters now pending against the Plaintiff.

The letter also stated that both Gerstein and Welch felt confident that if they approached Dobson with an agreement that the civil action would be dismissed, they could persuade Dobson to dismiss the criminal matters.  Gerstein also stated that "[t]his way everybody can get on with their lives and there is no jeopardy to the Plaintiff regarding any possibility for conviction of a criminal matter that might impede his entering law school which I understand is one of his goals."  Gerstein testified that, prior to dictating his April 7, 2000, letter to Attorney Redwood, he had not contacted Dobson about the representations in the letter.  Gerstein testified that he never spoke to Dobson regarding settlement of the civil case or regarding dismissal or resolution of the criminal matter with Dobson.  Welch testified that he never discussed dismissal of the criminal case pending against Redwood with Dobson.  Dobson testified that she does not recall seeing the April 7, 2000, letter.   Dobson also testified that she did not recall any communications with anybody, including Gerstein and Welch, regarding the possible dismissal of the criminal case against Redwood.  Attorney Redwood has

7

provided an affidavit in this case, dated July 20, 2005.  In her affidavit, Attorney Redwood stated that, at an undisclosed time after Redwood was indicted for a hate crime, she had a conversation with Gerstein and Dobson.  Attorney Redwood stated that Gerstein told her that, if Redwood dismissed his civil complaint against Welch, Welch would not testify in the criminal case against Redwood.  Attorney Redwood also stated that Dobson said that if she did not have a complaining witness, she would be forced to dismiss the criminal charge of hate crime.

On April 24, 2000, Welch filed a counter-complaint against Redwood in the civil case pending in Champaign County seeking damages from Redwood for his commission of a hate tort.  Subsequently, Gerstein and Dobson did have some communications regarding the scheduling of depositions in the civil case and the issuance of copies of the depositions.

On November 6, 2000, Plaintiffs filed a Complaint (#1) in this court, arguing that their constitutional rights were being violated by the criminal proceedings against Redwood.  On November 30, 2000, this court entered an Order (#21) which dismissed the Complaint without prejudice based upon abstention pursuant to Younger v. Harris, 401 U.S. 37 (1971).

Subsequently, the criminal case against Redwood was assigned to Assistant State's Attorney Dan Pope because Dobson had two homicide cases scheduled for trial and was not available to prosecute the Redwood case.  Chase Leonhard, who was an assistant state's attorney at the time and is now an associate judge, testified at his deposition that he declined to take the case because he did not believe the indictment was sufficient to state a crime.  Redwood filed motions to dismiss, alleging the charges against him failed to state a crime as a matter of law and that his conduct was pure speech protected by the First Amendment.  On January 4, 2002, Circuit Judge Thomas J. Difanis dismissed the charges against Redwood.  The State appealed from Judge Difanis' ruling and

8

the Illinois Appellate Court, Fourth District, affirmed.  People v. Redwood, 780 N.E.2d 760 (Ill. App. Ct. 2002).  The appellate court stated that, "[a]fter reviewing the case law, we conclude that the speaker's 'fighting words' must contain either an explicit or implied threat and that vulgarities and epithets do not suffice to trigger the State's prosecutorial powers and criminal sanctions." Redwood, 780 N.E.2d at 764.  The appellate court noted that "Welch and many others may find the words [spoken by Redwood] offensive" but then concluded that "the comment by defendant did not rise to the level of 'fighting words,' because the comment did not contain an explicit or implied threat."  Redwood, 780 N.E.2d at 765.

In the meantime, on March 27, 2002, Circuit Judge John P. Shonkwiler granted summary judgment in favor of Redwood on his claims of battery and false imprisonment in the civil lawsuit filed in Champaign County.  A jury trial commenced in Champaign County on June 7, 2004, regarding the issue of damages on Redwood's claim against Welch and on Welch's counterclaim against Redwood.  On June 17, 2004, the jury began deliberations in the case.  While the jury was deliberating, the parties advised the court that the matter had been voluntarily resolved.  By agreement of the parties, the cause was dismissed with prejudice, with each party to bear his own respective costs of suit.  Redwood agreed to release Welch from any further liability for any and all damages claimed on the summary judgment of battery and summary judgment of false imprisonment previously entered.

Prior to the completion of the Champaign County case, on December 8, 2003, Plaintiffs filed a Motion in this court to reinstate their civil case and to amend their Complaint (#25).  On December 31, 2003, this court entered an Order (#28) granting Plaintiffs' Motion, and an Amended Complaint (#29) was filed.  This court then made rulings on motions to dismiss filed by Defendants.  On

October 4, 2004, Plaintiffs filed their 11-count Third Amended Complaint (#102).

In Count I, Redwood alleged that Dobson, Gerstein, Welch and Phillips were liable under 42 U.S.C. § 1983 for conspiracy to violate Redwood's First Amendment right to freedom of speech in public. Redwood alleged that Defendants "through a meeting of the minds, entered into a course of action which was calculated to and effectively did stop the plaintiff from speaking to Harvey Welch in public places, by wrongfully procuring and continuing a bad faith prosecution . . . against the plaintiff specifically to insure that the plaintiff did not speak to Harvey Welch." In Count II, Redwood alleged that Dobson, Gerstein, Welch and Phillips were liable under § 1983 for conspiracy to violate Redwood's right to petition the government. Redwood alleged that Defendants "through a meeting of the minds, entered into a course of action which was calculated to force and intimidate the plaintiff into dismissing a bona fide civil lawsuit, Champaign County Case 99-LM-910, in which Harvey Welch was the civil defendant, by wrongfully procuring and continuing a bad faith prosecution . . . against the plaintiff and then offering the plaintiff the dismissal of criminal felony prosecution in exchange for his dismissal of Case 99-LM-910." Redwood alleged that the conspiracy was motivated by Defendants' desires to chill his right of access to the state courts. In Count III, Redwood alleged that Dobson, Gerstein, Welch and Phillips were liable under § 1983 for conspiracy to violate Redwood's First Amendment right to free exercise of religion. Redwood alleged that "[u]nder his religion, he was and is required to teach truth and righteousness to all persons, including defendant Harvey Welch." Redwood alleged that Defendants "through a meeting of the minds, entered into a course of action which was calculated to and effectively did stop the plaintiff from speaking to Harvey Welch pursuant to the plaintiff's religious principles." In Count IV, Redwood alleged that Dobson, Gerstein, Welch and Phillips were liable under § 1983 for

10

conspiracy to violate the Fourteenth Amendment Equal Protection Clause by procuring and continuing a bad faith prosecution. In Count V, Redwood alleged that Welch was liable under § 1983 for malicious prosecution.

In Count VI, Redwood alleged that the City of Urbana was liable for its failure to properly train and supervise Phillips. In Count VII, Redwood alleged that Welch was liable for malicious prosecution under Illinois law. In Count VIII, Redwood alleged that Welch and Gerstein were liable under Illinois law for defamation. In Count IX, Attorney Redwood alleged that Welch, Gerstein and Phillips were liable under Illinois law for loss of consortium. In Count X, Redwood alleged that Gerstein, Welch and Phillips were liable under Illinois law for civil conspiracy. Finally, in Count XI, Redwood alleged that Gerstein, Welch and Phillips were liable under Illinois law for intentional infliction of emotional distress.

On November 11, 2004, Redwood filed a document (#116) indicating that he accepted an offer of judgment made by the City of Urbana in the amount of $3,000.00. Also on November 11, 2004, Attorney Redwood filed a document (#115) indicating that she accepted an offer of judgment made by the City of Urbana in the amount of $2,000.00. Accordingly, judgment will be entered in favor of Plaintiffs and against the City of Urbana, and Count VI is no longer at issue in this case.

ANALYSIS

I. PLAINTIFFS' MOTIONS

A.  MOTION TO RECONSIDER

On July 5, 2005, this court granted Welch's Motion for Extension of Time to File Motion for Summary Judgment (#170). In his Motion, Welch's attorney, David N. Rumley, stated that, due to a calendaring error, he missed the filing date established for filing dispositive motions. Rumley

11

also stated that "Plaintiff's counsel has been out of the state since June 24, 2005 and returned to work July 5, 2005.  Counsel requests an extension of the time to file to July 8, 2005."

On July 7, 2005, Plaintiffs filed a Motion to Reconsider and Vacate the Court's Order Granting Defendant Harvey Welch Extension of Time to File Motion for Summary Judgment (#171) and a lengthy Memorandum of Law in Support (#172).  Plaintiffs stated that a "calendar error" was not an adequate excuse for missing the deadline.  Plaintiffs also took great exception to the statement in the motion that "Plaintiff's counsel" was out of the state, stating that this was a "blatant lie" as neither Attorney Redwood nor Redwood's counsel, Charles L. Danner, were out of the state on those dates.

Rumley responded to this argument in Welch's Reply to Plaintiffs' Response to the Motion for Summary Judgment (#189).  Rumley stated that he had been out of the state, in Custer, S.D., and merely confused "plaintiff" and "defendant" when he dictated the motion for extension of time.  Rumley stated that the "court likely recognized the error (both in calendaring and dictating) and in its exercise of discretion granted an extension to July 8, 2005."

In fact, this court did assume, correctly, that it was Rumley, rather than Plaintiffs' counsel, who was out of the state.  This court also, in its discretion, granted a very short extension of time for Welch to file his Motion for Summary Judgment.  This court, on reconsideration, does not believe that it abused its discretion in granting the short extension of time.  Accordingly, Plaintiffs' Motion to Reconsider and Vacate (#171) is DENIED.

## B.  MOTIONS FOR SANCTIONS

### 1.  EXHIBIT V

On July 18, 2005, Plaintiffs filed a Motion and Memorandum of Law to Strike Exhibit V

12

filed by Defendant Gerstein in Support of his Motion for Summary Judgment and for Sanctions (#177). Plaintiffs argued that Exhibit V, a newspaper article, was hearsay and therefore inadmissible under Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiffs contended that Exhibit V should be stricken and disregarded by the court and that Gerstein's attorney, Roger Webber, should be ordered to pay monetary sanctions to Danner in the amount of $285.00.

On July 26, 2005, Gerstein filed his Response (#183) to the Motion. Gerstein conceded that his Exhibit V was an improper exhibit. Gerstein further stated that the violation of Rule 56(c) was unintentional and that sanctions were not warranted.

Plaintiffs' Motion (#177) is GRANTED in part and DENIED in part. Exhibit V is hereby stricken and has not been considered by this court in ruling on Gerstein's Motion for Summary Judgment. However, this court agrees with Gerstein that sanctions are not warranted pursuant to 28 U.S.C. § 1927 under these circumstances. Therefore, the request for sanctions is DENIED.

## 2. GERSTEIN DEPOSITION

On September 8, 2005, Plaintiffs filed a Motion for Discovery Sanctions (#191) and a Memorandum in Support (#192). Plaintiffs complained that the deposition of Defendant Gerstein was interrupted 175 times by objections, counsels' instructions not to answer, counsels' comments and refusal to answer by Gerstein. Plaintiffs asked this court to award sanctions against: Gerstein; Gerstein's attorney, Roger Webber; Welch's attorney, David Rumley; and Dobson's attorney, Richard Klaus. Plaintiffs asked this court to: (1) enter default judgment against Gerstein; (2) award Plaintiffs attorney's fees for the thwarted deposition; (3) award Plaintiffs reimbursement for the cost of the videographer and court reporter; (4) award Plaintiffs attorney fees for the time spent researching and drafting the motion; and (5) award Plaintiffs attorney fees and costs for the need to

13

serve a subpoena on Gerstein.  Plaintiffs also asked this court to "make its own determination as to how to proceed on the testimony of Marvin Gerstein which appears to be untruthful or evasive of the truth."  Dobson, Welch, and Gerstein all filed a Response to the Motion for Discovery Sanctions (#195, #196, #197).

This court has carefully reviewed Plaintiffs' Motion, Memorandum and attached exhibits, Defendants' Responses, and the deposition of Gerstein, which was taken on June 3, 2005.  This court notes that, in reviewing the Motions for Summary Judgment, it has also reviewed the other depositions taken in this case.  Suffice it to say, Redwood's attorney, Charles L. Danner, did not conduct some of the depositions reviewed by this court in a manner conducive to obtaining information.  Instead, the depositions were conducted in a manner more conducive to displaying his dislike, and even contempt, for the Defendants in this case.  This was especially true at Gerstein's deposition.  After reviewing the transcript of this deposition, this court concludes that Defendants' counsel actually exhibited remarkable restraint during the deposition.  This court further notes that it finds ludicrous Plaintiffs' suggestion that Gerstein's counsel could not properly instruct Gerstein not to answer questions "without first seeking a protective order or ruling" from Judge Bernthal. This court does not require counsel to anticipate objectionable questions and seek a protective order prior to the taking of a deposition.  This court advises Plaintiffs that, if they truly felt there was information they were entitled to elicit from Gerstein that Gerstein refused to provide, they should have filed a Motion to Compel immediately following the deposition rather than a Motion for Sanctions more than three months after the deposition was taken.

Plaintiffs' Motion for Discovery Sanctions (#191) is DENIED.

## II.  GERSTEIN'S MOTION

14

On August 19, 2005, Gerstein filed a Motion to Amend and Clarify (#190).  Gerstein stated that, in his Reply to Plaintiffs' Response to his Motion for Summary Judgment, he asked this court to strike Attorney Redwood's affidavit.  In his Motion, Gerstein asked that this court disregard his motion to strike.  Plaintiffs did not file any opposition to this Motion.  Accordingly, Gerstein's Motion to Amend and Clarify (#190) is GRANTED.  This court will disregard Gerstein's motion to strike included in his Reply.

### III.  MOTIONS FOR SUMMARY JUDGMENT

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole."  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000), quoting Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999).  In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 938 (7th Cir. 2003).  However,  neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient

to defeat a motion for summary judgment.  <u>Michas</u>, 209 F.3d at 692.  Moreover, a plaintiff cannot

defeat summary judgment by raising immaterial issues of fact.  <u>See</u> <u>Jordan v. Summers</u>, 205 F.3d

337, 345 (7th Cir. 2000).

B.  IMMUNITY

1.  ABSOLUTE IMMUNITY

Both Dobson and Phillips claim that they are entitled to absolute immunity and qualified

immunity as to the § 1983 claims against them.  Dobson claims that she is entitled to absolute

immunity because the basis of each of the constitutional claims against her is that she wrongly

instituted and continued a criminal prosecution against Redwood.  Dobson points out that it is well

settled that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune

from a civil suit for damages under § 1983." <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976); <u>see also</u>

<u>Spiegel v. Rabinowitz</u>, 121 F.3d 251, 256-57 (7th Cir. 1997).  Dobson notes that Redwood alleged

that she was "acting in a purely investigative function and not in a prosecutorial function."  She

argues, however, that the gravamen of each of Redwood's constitutional claims is that Dobson and

the other Defendants conspired to willfully violate Redwood's constitutional rights as guaranteed

under the United States Constitution in that the Defendants, through a meeting of the minds, entered

into a course of action which was calculated to violate Redwood's rights of free speech (Count I),

to petition the government (Count II), to free exercise of religion (Count III), and to equal protection

of the law (Count IV) by "<u>wrongfully procuring and continuing a bad faith prosecution</u>" against

Redwood.  Dobson contends that, therefore, these claims are based on the allegation that Defendants

wrongfully initiated and continued a criminal prosecution, actions for which Dobson is absolutely

immune.

16

In their Response, Plaintiffs recognize that prosecutors are entitled to absolute immunity for conduct associated with the judicial phase of the criminal process. However, Plaintiffs note that prosecutors are not absolutely immune from liability for their "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Plaintiffs argue that Dobson is being sued for her direction of Phillips' investigation, not for her role as a prosecutor.

This court concludes, however, that Plaintiffs' subsequent arguments regarding Dobson's conduct belie this contention. Plaintiffs complain about the evidence that Dobson should have presented to the grand jury and about her decision to charge Redwood with a Class 4 felony. Plaintiffs' claims actually relate to her "initiation of a prosecution." For these actions, Dobson is entitled to absolute immunity. See Buckley, 509 U.S. at 272-73; Imbler, 424 U.S. at 431.

Phillips argues that Redwood's claim against him is based upon Redwood's contention that he presented false and misleading evidence to the grand jury for the purpose of securing a bad faith prosecution against Redwood. Phillips notes that, in Newsome v. McCabe, 319 F.3d 301, 304 (7th Cir. 2003), the Seventh Circuit confirmed the rule of absolute immunity with respect to witnesses.

In Response to this argument, Plaintiffs contend that the law is unsettled regarding whether a police officer who testifies as a complaining witness before the grand jury is entitled to absolute immunity. Plaintiffs therefore urge this court to find that Phillips is entitled only to qualified immunity for his grand jury testimony.

This court concludes that the law in the Seventh Circuit is settled that police officers testifying before the grand jury are entitled to absolute immunity from liability under § 1983. See

Curtis v. Bembenek, 48 F.3d 281, 284 (7th Cir. 1995); Kincaid v. Eberle, 712 F.2d 1023, 1023-24 (7th Cir. 1983); see also Mut. Med. Plans, Inc. v. County of Peoria, 309 F. Supp. 2d 1067, 1080 (C.D. Ill. 2004).   Accordingly, this court concludes that Phillips is entitled to absolute immunity from liability for Redwood's § 1983 claims based upon his grand jury testimony.

## 2. QUALIFIED IMMUNITY

Even if this court accepted Plaintiffs' argument that Dobson and Phillips are not entitled to absolute immunity, this court would have to find that they are entitled to qualified immunity under the facts of this case.  The doctrine of qualified immunity protects governmental officials performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lunini v. Grayeb, 395 F.3d 761, 768 (7th Cir. 2005). More than this, qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Lunini, 395 F.3d at 768, quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

> Accordingly, where, as here, a 'defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.'

Lunini, 395 F.3d at 768, quoting Saucier v. Katz, 533 U.S. 194, 200-01 (2001).

The plaintiff has the burden of establishing that a given right is "clearly established." Lunini, 395 F.3d at 769.  To do so, the plaintiff must demonstrate either that a court has upheld the

18

purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right.  Lunini, 395 F.3d at 769.

Plaintiffs argue that qualified immunity does not apply in this case because the words used by Redwood were not "fighting words" which could justify an investigation and prosecution for a hate crime.  Therefore, Plaintiffs are apparently contending that such an investigation and prosecution violated Redwood's clearly established First Amendment rights.  In support of this argument, Plaintiffs cite only People v. Redwood, 780 N.E.2d 760, 764 (Ill. App. Ct. 2002).  However, this court notes that the Illinois Appellate Court decided this case in 2002, long after the decision to investigate and prosecute Redwood was made in 1999.  Plaintiffs assert that "[t]here was no new law made by the Fourth District in that case."  This court does not agree.  In its ruling, the Illinois Appellate Court carefully considered prior case law, none of which was directly on point, and made the determination that a speaker's fighting words had to "contain either an explicit or implied threat" and that "vulgarities and epithets do not suffice to trigger the State's prosecutorial powers and criminal sanctions."  Redwood, 780 N.E.2d at 193.  The court in Redwood did not cite case law which previously specifically held that fighting words had to "contain either an explicit or implied threat."

Moreover, the Seventh Circuit has interpreted Illinois law somewhat differently.  In Gower v. Vercler, 377 F.3d 661 (7th Cir. 2004), the Seventh Circuit decided a case which had been brought in this court by Attorney Redwood.  In Gower, the plaintiff filed a lawsuit and alleged two sheriff's deputies violated his constitutional rights by entering his home without his consent and by arresting him without probable cause.  Gower, 377 F.3d at 666.  A jury trial was held and the jury returned a verdict in favor of the defendants.  On appeal, Attorney Redwood argued that this court erred in

19

denying the plaintiff's motion for directed verdict which was based upon the plaintiff's argument that, as a matter of law, the defendants lacked probable cause to arrest him for disorderly conduct based merely upon the words that he spoke to his neighbors.  Gower, 377 F.3d at 666.  The Seventh Circuit first noted that the prevention and punishment of "insulting or 'fighting' words" have never been thought to raise any constitutional problem.  Gower, 377 F.3d at 670.  The court further stated that "[b]y their very nature, 'fighting words . . . provoke a breach of the peace, such that they satisfy a necessary element of disorderly conduct."  Gower, 377 F.3d at 670, quoting People v. Allen, 680 N.E.2d 795, 799 (Ill. App. Ct. 1997).  The court also noted that it had reiterated a number of times that "the emphasis of the statute is upon the tendency of the conduct to disturb others and to provoke disruptions of public order and upon the unreasonableness of the activity when viewed in the context of the surrounding circumstances."  Gower, 377 F.3d at 670, quoting Terket v. Lund, 623 F.2d 29, 31 (7th Cir. 1980).  In Gower, the testimony was that the plaintiff shouted personally abusive obscenities at his neighbors (who were also his in-laws) and insulted his father-in-law's courage by mocking him as a "chicken."  Gower, 377 F.3d at 669.  Attorney Redwood argued that these statements did not constitute "fighting words" as a matter of law.  Gower, 377 F.3d at 670.

The Seventh Circuit rejected this argument, concluding that the defendant deputies had probable cause to believe that the plaintiff's reported verbal assaults consisted of "fighting words" that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." Gower, 377 F.3d at 670, quoting Chaplinski v. State of New Hampshire, 315 U.S. 568, 571-72 (1942).  The Seventh Circuit reached this conclusion because the words used were "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction."  Gower, 377 F.3d at 670.  The Seventh

20

Circuit also noted that the plaintiff had a history of violent behavior toward his in-laws, which magnified that likelihood of a violent, immediate reaction.  Gower, 377 F.3d at 670.  The Seventh Circuit concluded that the "the Illinois disorderly conduct statute was not applied unconstitutionally" against the plaintiff based upon the facts of this case.  Gower, 377 F.3d at 671.

In this case, Welch reported to Dobson and Phillips that, on October 1, 1998, Redwood yelled across the street at him and called him a "shoe-shine boy."  Welch reported that he felt alarmed, disturbed and provoked.  Welch stated that he considered the term "shoe-shine boy" to be a racial slur.  Welch also reported that Redwood had harassed and insulted him on prior occasions.  Dobson testified that she found Welch to be credible and concluded, based upon the report she received from Welch, that she had probable cause to initiate a judicial proceeding against Redwood for hate crime, predicated on disorderly conduct.  Phillips therefore interviewed Welch and testified before the grand jury in support of an indictment for hate crime.  Subsequently, Redwood was indicted for hate crime based on the predicate offense of disorderly conduct which alleged that Redwood "yelled across a street at Harvey Welch, 'How long are you going to be a shoe-shine boy?' in such an unreasonable manner as to alarm and disturb Harvey Welch and provoke a breach of the peace."

Under these facts, this court concludes that it was not unreasonable for Dobson and Phillips to conclude that Redwood's yelling across the street and calling Welch, an African American man, a "shoe-shine boy" was a hate crime, predicated on disorderly conduct.  This court concludes that Dobson and Phillips could reasonably conclude that the words "shoe-shine boy" directed toward an African American man "by their very utterance inflict injury or tend to incite an immediate breach of the peace."  See Gower, 377 F.3d at 670.  In addition, calling an African American man a "shoe-

21

shine boy" could clearly be considered a "personally abusive epithet[]" which, when addressed to the ordinary citizen (in this case, an African American man) was "as a matter of common knowledge, inherently likely to provoke violent reaction." See Gower, 377 F.3d at 670. This is especially true considering that Welch reported that Redwood had a history of harassing and insulting him. See Gower, 377 F.3d at 670. This court additionally notes that the report regarding the incident showed that Redwood's words did provoke a breach of the peace as Welch crossed the street, argued with Redwood and pushed the van door against Redwood.

Therefore, based upon Gower and the case law cited in that case, this court concludes that the investigation and prosecution based upon Redwood calling Welch a "shoe-shine boy" did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This court concludes that Dobson and Phillips could reasonably conclude that Redwood's conduct had a tendency "to disturb others and to provoke disruptions of public order" and was unreasonable activity "when viewed in the context of the surrounding circumstances." See Gower, 377 F.3d at 670. The fact that the indictment was ultimately dismissed and the dismissal was affirmed by the Illinois Appellate Court does not change this court's conclusion. A qualified immunity inquiry focuses on whether the right in question was "clearly established" at the time of the alleged misconduct. See Lunini, 395 F.3d at 769. Accordingly, Dobson and Phillips are entitled to qualified immunity as to Redwood's § 1983 claims.

### C.  CONSPIRACY UNDER § 1983

In any case, this court concludes that Defendants are all entitled to summary judgment on Redwood's § 1983 claims because Redwood failed to establish the existence of a conspiracy. To establish a prima facie case of civil conspiracy under Section 1983, a plaintiff must show (1) an

22

express or implied agreement among the defendants to deprive the plaintiff of his or her constitutional rights, and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement.  Scherer v. Balkema, 840 F.2d 437, 442 ( 7th Cir. 1988).  The question of whether an agreement exists is for the jury to decide only "so long as there is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a "meeting of the minds" and thus reached an understanding' to achieve the conspiracy's objectives." Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754 (1980), quoting Adickes v. S.H Kress & Co., 398 U.S. 144, 158-59 (1970).

Defendants have all argued that the facts here do not show the existence of a conspiracy to deprive Redwood of his constitutional rights.  Dobson argues that the material undisputed facts establish that she did not conspire with Welch, Gerstein, and Phillips to violate Redwood's constitutional rights and that Redwood's constitutional rights were not violated.  Gerstein argues that there has been no proof presented which evidences an agreement between the Defendants to pursue criminal charges against Redwood.  Gerstein contends that the evidence shows that he and Dobson only discussed subjects commonly shared by attorneys working on related cases.  He argues that conversations about legitimate topics, without any additional proof, is not sufficient to raise a genuine issue of material fact regarding whether a conspiracy existed.  Phillips argues that there is a complete absence of evidence, implied or actual, that a conspiracy existed between Phillips and Dobson, or any of the Defendants, to violate the constitutional rights of Redwood.  Welch contends that no facts have been presented by Plaintiffs to support their claim that an agreement to violate Redwood's constitutional rights was entered into by any Defendant and Welch.

Plaintiffs argue that the facts "clearly show a conspiracy to deprive Erik Redwood of

23

constitutional rights, vindictively by the co-conspirators."  Plaintiffs further contend that Welch, Gerstein, Dobson, Troy Phillips and Duke Harris, "intentionally engaged in conduct which involved dishonesty, fraud, deceit and misrepresentations of law which was prejudicial to the administration of justice, on a smaller scale but just as serious as the infamous Chicago Greylord scandal." Plaintiffs have set out a detailed account of a conspiracy, set in motion by Gerstein, to get Redwood charged with a crime in order to force him to abandon his Champaign County civil case and prevent him from having any contact with Welch.  In support of these arguments, Plaintiffs rely on pure speculation regarding the nature of communications between the alleged co-conspirators, the fact that some of the alleged co-conspirators were on a "first name basis," Gerstein's April 7, 2000 "extortion letter," Attorney Redwood's account of her conversation with Gerstein and Dobson, and on character assassination, primarily of Gerstein.

As far as Plaintiffs' character attacks, this court notes that it is aware that Gerstein was the subject of disciplinary proceedings before the Illinois Attorney Registration and Disciplinary Commission (ARDC).  This court is also aware that Gerstein is known in this community for engaging in rather odd behavior and for using "colorful" language.  Plaintiffs have recounted numerous instances of inappropriate remarks and conduct by Gerstein during the Champaign County proceedings, which this court has no reason to doubt.  This court is also aware that Dobson was sometimes criticized in the local newspaper for her prosecutorial decisions, none of which involved this case.  These facts, obviously, are not evidence of a conspiracy in this case.

This court also notes that it does not believe that Gerstein's letter can be considered an "extortion" letter or evidence of a conspiracy.  The letter was an attempt at settling the civil case, something which is commonplace and reasonable, and set out some reasons why it would be in the

24

parties' interests to put the whole October 1, 1998, incident behind them.   This court simply does not see the nefarious motivations behind the letter that Plaintiffs do and concludes that a rational jury could not find the letter to be evidence of a conspiracy to violate Redwood's constitutional rights. This court also notes that Attorney Redwood's affidavit, which recounts a conversation she had with Gerstein and Dobson at an undisclosed time following the indictment, does not provide evidence of a conspiracy.  According to Attorney Redwood, Gerstein told her that, if Redwood dismissed his civil complaint against Welch, Welch would not testify in the criminal case against Redwood.  Attorney Redwood also stated that Dobson said that if she did not have a complaining witness, she would be forced to dismiss the criminal charge of hate crime.  This conversation simply corroborates that fact that Gerstein was trying to settle the civil case and further establishes the rather obvious fact that, if there was no complaining witness, the criminal case would probably have to be dismissed.  This court cannot see how this conversation in any way establishes a conspiracy to violate Redwood's constitutional rights.

This court is also baffled by Plaintiffs' repeated assertions that Welch "recanted" his testimony that it was Attorney Redwood's September 1, 1999, letter which motivated him to contact the State's Attorney's office regarding Redwood's conduct on October 1, 1998.  In the deposition testimony cited by Plaintiffs, Welch responded, "You know what, it wasn't about the letter," in answer to Attorney Redwood's questioning about "what criminal statute" Welch felt the letter violated and why Welch went to the police about the letter.  Welch then explained, consistent with his previous testimony, that his "complaint was about past conduct on [Redwood's] part" and that the "letter was the motivation."

After this court's careful review of all of the documents presented in this case and the

25

arguments of the parties, this court agrees with Defendants that Plaintiffs have not presented sufficient evidence to even create a possibility that a jury could infer from the circumstances that Defendants had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives. Therefore, the evidence is not sufficient to create a genuine issue of material fact on the issue of conspiracy which should go to the jury.

Accordingly, for all of the reasons stated, this court concludes that Dobson, Gerstein, Phillips and Welch are entitled to summary judgment on Redwood's § 1983 conspiracy claims. Therefore, judgment is entered in favor of Defendants and against Redwood on Counts I through IV of Plaintiffs' Third Amended Complaint.

## D.  REMAINING CLAIMS

### 1.  DEFAMATION

Gerstein and Welch both argue that there is no evidence to support Redwood's claim of defamation. In response, Plaintiffs argue that there is evidence that they approached Attorney Mark Lipton about representing Redwood in the criminal matter because Lipton had previously represented one of their children and they were satisfied with his legal representation in that case. Plaintiffs stated that Lipton was very friendly to them. Plaintiffs note that Gerstein admitted that he talked to Lipton about Redwood. Plaintiffs argue that "[a]fter Mr. Lipton talked to Gerstein, he was decidedly unfriendly to the Redwoods and he refused to represent Mr. Redwood." Plaintiffs argue that the elements of a cause of action for defamation have therefore been met.

To establish that defamation occurred under Illinois law, the plaintiff must show: (1) that the defendant made a false statement concerning the plaintiff; (2) that there was an unprivileged publication of the defamatory statement by the defendant to a third party; and (3) that the plaintiff

26

was damaged.  Thomas v. Fuerst, 803 N.E.2d 619, 623 (Ill. App. Ct. 2004).  Here, Plaintiffs have

shown only that Gerstein talked to Lipton.  They have presented no evidence, such as an affidavit

from Lipton, as to what was said by Gerstein.  There is no way to know, based upon the evidence

before this court, what Gerstein said to Lipton and whether any statement he made was false.

Therefore, Plaintiffs have completely failed to show that a "false statement" was made.  Moreover,

they have not argued that Welch made any defamatory statement to Lipton at all.

Accordingly, this court concludes that Welch and Gerstein are entitled to summary judgment

on Redwood's claim of defamation.  Therefore, judgment is entered in favor of Welch and Gerstein

and against Redwood on Count VIII of Plaintiffs' Third Amended Complaint.

## 2. MALICIOUS PROSECUTION

Redwood claims that Welch is liable under § 1983 and under Illinois law for malicious

prosecution.  The Seventh Circuit has held that there is no cause of action under § 1983 for

malicious prosecution.  See Penn v. Harris, 296 F.3d 573, 576 (7th Cir. 2002); Newsome v. McCabe,

256 F.3d 747, 750 (7th Cir. 2001).  In Newsome, the Seventh Circuit determined that "the existence

of a tort claim under state law knocks out any constitutional theory of malicious prosecution."

Newsome, 256 F.3d at 750; see also Mut. Med. Plans, Inc., 309 F. Supp. 2d at 1079.  Therefore, this

court concludes that Welch is entitled to summary judgment on Count V of Plaintiffs' Third

Amended Complaint.

This court also concludes that Welch is entitled to summary judgment on Plaintiffs' Illinois

law claim of malicious prosecution.   Under Illinois law, a plaintiff must prove: (1) the

commencement or continuance of a criminal prosecution by the defendant; (2) the termination of

the proceeding in the plaintiff's favor; (3) the absence of probable cause for the proceeding; (4) the

27

presence of malice; and (5) damages to the plaintiff resulting from the commencement or continuance of that proceeding.  Mut. Med. Plans, Inc., 309 F. Supp. 2d at 1080; Allen v. Berger, 784 N.E.2d 367, 369 (Ill. App. Ct. 2002).  In Illinois, malicious prosecution actions are disfavored. Allen, 784 N.E.2d at 369; see also Mut. Med. Plans, Inc., 309 F. Supp. 2d at 1081.  "Public policy encourages the exposure of crimes and citizen cooperation, and these interests are furthered by narrowly circumscribing the instances in which malicious prosecution actions may be brought." Allen, 784 N.E.2d at 369-70.  "Citizens acting in good faith who have probable cause to believe that crimes have been committed should not be deterred from reporting them out of fear of unfounded suits by those they have accused."  Allen, 784 N.E.2d at 370.  Accordingly, an action for malicious prosecution requires evidence that the defendant made "a knowingly false report to a prosecuting officer."  See Allen, 784 N.E.2d at 370.

In this case, Welch reported that Redwood called him a "shoe-shine boy" which he took as a racial slur and which alarmed, disturbed and provoked him.  This court has already concluded that Welch's report was sufficient for Dobson and Phillips to have probable cause to investigate and prosecute Redwood for hate crime predicated on disorderly conduct.  This court further concludes that, based upon the facts here, there is no genuine issue of material fact regarding whether Welch knowingly made a "false report."  In fact, Redwood admitted that he called Welch a "shoe-shine boy" on October 1, 1998, and on prior occasions.

Judgment is entered in favor of Welch and against Redwood on Counts V and VII of Plaintiffs' Third Amended Complaint.

### 3.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Gerstein, Phillips and Welch all argue that Redwood has presented no evidence to support

his allegations that they are liable for intentional infliction of emotional distress.  In response, Plaintiffs argue that there is evidence that Defendants conspired to present fabricated evidence in order to obtain an indictment, resulting in a bad faith prosecution.  Plaintiffs argue that this evidence is sufficient to meet the requirements of a claim of intentional infliction of emotional distress.  Based upon Plaintiffs' arguments, this court agrees with Phillips that Redwood's claim of intentional infliction of emotional distress rests upon the alleged conspiracy of Defendants.

Under Illinois law, the following elements are required to state a claim for the tort of intentional infliction of emotional distress: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.  Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  Pub. Fin. Corp. v. Davis, 360 N.E.2d 765, 767 (Ill. 1976).

This court has grave doubts regarding whether the evidence presented in this case even comes close to the "outrageous" conduct required to establish a claim for intentional infliction of emotional distress.  However, this court does not need to decide this issue because Plaintiffs have rested their claim on the alleged conspiracy of Defendants.  This court has already concluded that Plaintiffs have not submitted sufficient evidence to raise a genuine issue of material fact regarding the existence of a conspiracy.  Therefore, this court must conclude that there is insufficient evidence to present to a jury on the issue of intentional infliction of emotional distress.

Accordingly, this court concludes that Gerstein, Phillips and Welch are entitled to summary

judgment on Redwood's claim of intentional infliction of emotional distress.  Therefore, judgment is entered in favor of Gerstein, Phillips and Welch on Count XI of Plaintiffs' Third Amended Complaint.

### 4.  CIVIL CONSPIRACY UNDER ILLINOIS LAW

Gerstein, Phillips and Welch also argue that they are entitled to summary judgment on Redwood's state law conspiracy claim.  Under Illinois law, civil conspiracy is defined as a combination of two or more persons, for the purpose of accomplishing by a concerted action either an unlawful purpose or a lawful purpose by unlawful means.  See McClure v. Fiberglass Corp., 720 N.E.2d 242, 258 (Ill. 1999).  If a conspiracy is shown by circumstantial evidence, the evidence must be clear and convincing.  McClure, 720 N.E.2d at 258.  This court has already concluded that Defendants are entitled to summary judgment on Redwood's § 1983 conspiracy claims because, under these facts, there is no genuine issue of material regarding the issue of conspiracy to go to the jury.  This court must then conclude that there is no "clear and convincing" circumstantial evidence of a conspiracy.  Accordingly, Gerstein, Phillips and Welch are entitled to summary judgment on Redwood's state law claim of civil conspiracy.  Judgment is entered in favor of Gerstein, Phillips and Welch on Count X of Plaintiffs' Third Amended Complaint.

### 5. LOSS OF CONSORTIUM

Attorney Redwood can only recover on her claim of loss of consortium if she can prove liability on the part of the Defendants.  See Johnson v. May, 585 N.E.2d 224, 232 (Ill. App. Ct. 1992).  Because this court has concluded that Defendants are entitled to summary judgment on all of Redwood's claims, summary judgment must be entered in favor of Gerstein, Phillips and Welch on this claim as well.  Therefore, judgment is entered in favor of Gerstein, Phillips and Welch and

against Attorney Redwood on Count IX of Plaintiffs' Third Amended Complaint.

IT IS THEREFORE ORDERED THAT:

(1) Judgment is entered in favor of Plaintiffs and against the City of Urbana pursuant to the acceptance of the Offers of Judgment (#115, #116).

(2) Defendants' Motions for Summary Judgment (#164, #166, #168, #173) are GRANTED. Judgment is entered against Plaintiffs and in favor of Dobson, Gerstein, Phillips and Welch.

(3) Plaintiffs' Motion to Reconsider and Vacate (#171) and Motion for Discovery Sanctions (#191) are DENIED.

(4) Plaintiffs' Motion to Strike and for Sanctions (#177) is GRANTED in part and DENIED in part.

(5)  Gerstein's Motion to Amend and Clarify (#190) is GRANTED.

(6) This case is terminated.  Accordingly, the final pretrial conference scheduled for October 28, 2005, and the jury trial scheduled for November 7, 2005, are hereby VACATED.

ENTERED this 12th day of October, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE